**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DANIEL LEE GLASPELL,**

        **Plaintiff,**

**v.**                                      **Civil Action No. 3:19-CV-99
(GROH)**

**SCOTT PAUGH,
JAMES RUBENSTEIN,
ELLA MESSINGER,
JANE DOE, and
CO CONDIN,**

        **Defendants.**

**REPORT AND RECOMMENDATION**

## I.    INTRODUCTION

On June 12, 2019, the *pro se* Plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983.  ECF No. 1.[1]  Plaintiff is currently an inmate at the Northern Regional Jail in Moundsville, West Virginia.  https://apps.wv.gov/OIS/OffenderSearch/RJA/Offender. Previously, Plaintiff was an inmate at Martinsburg Correctional Center (MCC) in Martinsburg, West Virginia, where he contends his civil rights were violated.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 1915A(b) for judicial review.  For the reasons set forth below, this Court recommends that Plaintiff's complaint be dismissed without prejudice for failure to state a claim.

---

[1] All ECF number cited herein are in 3:19-CV-99, unless otherwise noted.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Plaintiff's Complaint

Plaintiff's complaint alleges five grounds for relief against five named defendants: (1) that Defendant Paugh, the warden at MCC, failed to respond to Plaintiff's complaint or assist Plaintiff in obtaining access to the courts [ECF No. 1 at 7]; (2) that Paugh failed to properly train and instruct his subordinates at MCC on Division of Corrections policies, and that such failure led to violations of Plaintiff's civil rights [Id. at 8]; (3) that Defendant Messinger was derelict in her duties to treat Plaintiff while he was incarcerated at MCC [Id.]; (4) that Defendant Jane Doe is a replacement for Defendant Messinger, and that Jane Doe was also derelict in her duties to treat Plaintiff while he was incarcerated at MCC [Id.]; and (5) that Defendant Condin made a "conscious choice to maltreat and mistreat this Plaintiff and violate his constitutional rights" [Id. at 3].

Plaintiff does not assert specific physical injuries, but instead asserts that he has been injured by: sexual discrimination, deprivation of a safe and healthy living environment, harassment, denial of medical and psychiatric care; denial of access to the courts, and that his First, Sixth, Eighth and Fourteenth Amendment rights have been violated.  For relief, Plaintiff requests that the Court grant:

> Constitutional release; enumeration for constitutional violations through a jury trial.  Review of the grievance procedure at Martinsburg and a full inspection of the premise where inmate[s] reside and are held. Prevent the housing of inmates in the non-heated pod in winter months and the non-air conditioned pod in summer.  Other relief in the guise of punitive punishment and relief yet to be determined. Reimbursement of all fees and costs to the Plaintiff.

ECF No. 1 at 9.

## III.   LEGAL STANDARD

### A.   Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[2] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

"While the courts liberally construe *pro se* pleadings as a matter of course . . .,

---

[2]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

judges are not also required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417- 18 (7th Cir. 1993) (quoting Haines v. Kerner).

**B.      § 1983 Claims**

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257 (1978). In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

Gomez, 446 U.S. at 640.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." Ziglar v. Abassi, 137 S.Ct. 1843, 1860 (2017).

4

In <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

(internal citations omitted).  The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff."  <u>Shaw</u>, <u>supra</u>, <u>citing</u> <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof."  <u>Shaw</u>, 13 F.3d at 799.  "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff."  <u>Id.</u>

## IV.    ANALYSIS

The civil action filed by Plaintiff is untimely and seeks relief which is improper in a § 1983 action.   Further, even if Plaintiff's claims were timely filed, the supervisory defendants are protected from liability by the doctrine of qualified immunity, and Plaintiff fails to state a claim against the remaining defendants.

### A.    The Statute of Limitations Bars All Claims Against the Defendants

Section 1983 does not contain an express statute of limitations; therefore, federal

courts apply the forum state's statute of limitations for personal injury claims, see <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007); <u>Owens v. Baltimore City State's Attorney Office</u>, 767 F.3d 379, 388 (4th Cir. 2014), and its corresponding tolling rules. Thus, timeliness of an action is determined based upon the relevant state limitations period for personal injury actions.

W.Va. Code § 55-2-12(b) provides:

> Every personal action for which no limitations is otherwise prescribed shall be brought: (a)  within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall accrued if it be for damages for personal injuries; and (c) within one year or next after the right to bring the same shall have accrued if it be for any other matter of such a nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

In this case, the plaintiff's claims are clearly outside the two-year applicable statute of limitations.  The complaint clearly states that the plaintiff's rights were alleged to have been violated at the time he was incarcerated at Martinsburg Correctional Center starting on July 1, 2016.  ECF No. 1-1 at 1.  Plaintiff asserts he was transferred from MCC to Saint Marys Correctional Center on October 20, 2016.  ECF No. 1-27 at 3.  That contention is supported by a grievance filed by Plaintiff on October 6, 2016, while at MCC, and another grievance filed on October 31, 2016, while at Saint Marys Correctional Center (SMCC).  ECF Nos. 1-23, 1-24, 1-25.  Given that the Plaintiff alleges that the violations of his rights, including the lack of access to the Courts occurred at MCC before his transfer on October 20, 2016, it is clear that he was aware of his claim on that date, but not later than October 31, 2016, when he filed a grievance at SMCC.  ECF No. 1-25.  All of Plaintiff's grievances, regardless of whether they were filed at MCC or SMCC, were exhausted by November

21, 2016.  ECF No. 1-30, at 2.  However, Plaintiff did not initiate this action until June 12, 2019, more than two years after the denial of the underlying grievances, and nearly three years after the events which he alleges violated his civil rights.  Because more than two years elapsed after the Plaintiff's grievances were denied but before Plaintiff filed suit, it is clear that Plaintiff's claims, regardless of any merit, are barred by the two-year statute of limitations.[3]

### B.    Immunity of and Improperly Named Defendants

### 1.    Qualified Immunity of Defendants Paugh and Rubenstein

Plaintiff fails to allege that either Paugh or Rubenstein, "through the official's own individual actions, has violated the Constitution," as required by Iqbal.  To the extent that Plaintiff alleges that Paugh and/or Rubenstein "failed to respond and assist the Plaintiff in his constitutional right to access the courts and to be free from cruel and unusual punishment," he fails to allege that Paugh and/or Rubenstein were personally responsible for any action or inaction.[4]  ECF No. 1 at 7 – 8.  Further, although Plaintiff claims that Paugh and/or Rubenstein are responsible for the actions of subordinate officials at Martinsburg Correctional Center, pursuant to Iqbal, individuals with supervisory responsibility are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights.

---

[3]  Plaintiff's complaint and attachments do not address the statute of limitations, including any discussion of whether the statute bars his claims, or should be tolled to permit him to pursue his claims. Further, the Court notes that Plaintiff does not describe any continuing violation of his rights which might constitute a continuing tort which would toll the statute of limitations.  DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).

[4]  Rubenstein was identified as a party Defendant, but Plaintiff failed to identify him as a Defendant in any of his specific claims, or identify any wrongdoing attributed to Rubenstein.  Nevertheless, because Rubenstein as the Commissioner and Paugh as the warden, were both supervisors or administrators, they are treated as such under a qualified immunity analysis.

Paugh and Rubenstein, neither of whom Plaintiff alleges had any contact with him directly, had, at most, only supervisory responsibility for acts of their subordinates who had contact with Plaintiff.  However, "Government officials may not be held liable for the unconstitutional conduct of their subordinates." Ashcroft v. Iqbal, supra, 556 U.S. at 676.

To the extent that Plaintiff alleges that Paugh, the warden at MCC, or Rubenstein as the Commissioner, possessed personal knowledge of any problems with Plaintiff's medical treatment, Plaintiff still fails to state a claim upon which relief can be granted. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)).

"We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), Cert. denied, 513 U.S. 813 (1994) (citations omitted).

"To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the

conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, 13 F.3d at 799, citing *Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984). "A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses," however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id. Plaintiff fails to state how Paugh or Rubenstein violated his civil rights, or how their actions violated any law or the Constitution.

Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel). Thus, even assuming Paugh and Rubenstein, supervisory Defendants, had notice of Plaintiff's administrative grievance regarding his medical treatment or lack thereof, that notice does not rise to the level of personal involvement for liability in this suit. Further, to the extent that Paugh and Rubenstein properly relied on any professional judgment of trained medical personnel regarding Plaintiff's medical needs, that reliance was proper based on the holding of Miltier, and neither Paugh nor Rubenstein may be held liable under § 1983 for that reliance.

Additionally, as noted above, vicarious liability under the theory of respondeat

superior is inapplicable to § 1983 actions.   Section 1983 claims are brought against individual state actors for their own acts.   <u>Ashcroft v. Iqbal</u>, <u>supra</u>, 556 U.S. at 676. However, Plaintiff has failed to articulate any violation of his Constitutional rights by Paugh or Rubenstein.   Further, Plaintiff failed to allege that those named supervisory officials personally or in their individual capacities took any action which violated his Constitutional rights.   Accordingly, the Court finds the Paugh and Rubenstein are entitled to qualified immunity against Plaintiff's claims that they should be liable as the supervisors of subordinates who he claims violated his rights.   Consistent with the holdings of the United States Supreme Court, it is clear that the Plaintiff fails to present a claim upon which relief can be granted as relates to Paugh and Rubenstein.   Because Plaintiff can prove no set of facts which would entitle him to relief, he fails to state a claim upon which relief may be granted, and his complaint should be dismissed with prejudice as to Paugh and Rubenstein.

Finally, to the extent that Plaintiff asserts claims against Paugh and Rubenstein in their official capacities, they are not liable under § 1983.   The Supreme Court has long recognized that such state officials are immune from liability under § 1983:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

<u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (internal citations omitted). Accordingly, even if the Court were to consider Plaintiff's claims against Paugh and

Rubenstein, as being asserted against those Defendants in their official capacity, Plaintiff has failed to state a claim upon which relief may be granted.

### 2.      Defendant Jane Doe

Petitioner claims Defendant Jane Doe, a psychiatrist assistant, violated his constitutional rights because although she recommended Plaintiff see a psychiatrist in person, she denied him access to the medicine and treatment he contended he required. ECF No. 1-1 at 2 – 3.

Plaintiff's claims against Jane Doe merit dismissal for failure to state a claim upon which relief may be granted.  Plaintiff has failed to comply with the Federal Rules of Civil Procedure requirements in regard to that Defendant.  First, Plaintiff has failed to provide the name of Jane Doe[5], as required by Federal Rule of Civil Procedure Rule 10(a), which requires that the "title of a complaint must name all the parties."   Second, Plaintiff is required to provide, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55 (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Plaintiff's complaint fails to properly identity Jane Doe, an individual defendant whom Plaintiff claims violated his civil rights, and the undersigned recommends that if this matter is addressed on the merits, that it be dismissed without prejudice as to the defendant identified as "Jane Doe".[6]

---

[5]  Plaintiff identified Jane Doe as the "Psychiatric office assistant that replaced Ella Messinger upon her promotion to the jail side of the MCC."  ECF No. 1 at 3.

[6]  Because Plaintiff has failed to provide the name of the alleged offending defendant, as required by Fed. R. Civ. P. 10(a), the undersigned need not address whether Plaintiff's complaint is sufficient to state a cause of action.

### 3.   Defendant Messinger

Plaintiff was then[7] seen by Defendant Messinger, a "psych assistant" from the neighboring Eastern Regional Jail.  Plaintiff acknowledges that Messinger "explained that there existed no psychiatric treatment available" for his condition.  Id. at 3.  According to Plaintiff, "Messinger completed [his] referral . . . [but] Martinsburg Correctional Center did not honor the referral given by Messinger to see a doctor."  Id.  Plaintiff claims that as a result he had a "full blown panic attack and nervous breakdown."  Id.

"Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016), *cert. denied sub nom*. Phillip v. Scinto, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017). "In order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a] basic human need was objectively 'sufficiently serious,' " and (2) that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " De'Lonta v. Angelone, 330 F.3d at 634 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)).  As explained in Scinto, the "objective" prong of Farmer requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.' " 841 F.3d at 225.  Scinto further held that to be "sufficiently serious," the deprivation must be "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial

---

[7]  Plaintiff asserts that Jane Doe replaced Messinger at MCC, but also that Jane Doe saw him first. While it is unclear, it appears that Messinger was initially employed by MCC, then transferred to the ERJ, and that Jane Doe then replaced Messinger at MCC.  Plaintiff contends that he was seen by Jane Doe, and later by Messinger from the ERJ.  ECF No. 1-1 at 2 – 3.

risk of such serious harm resulting from ... exposure to the challenged conditions." Id. quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).  In order to state a cognizable civil rights claim related to medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976).  In medical needs cases, the Farmer test requires Plaintiff to demonstrate officials' deliberate indifference to a serious medical need that has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Scinto, *quoting* Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) *cert. denied*, 486 U.S. 1006 (1988). The Fourth Circuit previously explained in Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), that, " '[b]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.' " *Citing* Hudson v. McMillian, 503 U.S. 1, at 9 (*quoting* Estelle, 429 U.S. at 104)." 71 F.3d at 166. "[P]risoners do not have a constitutional right 'to the treatment of his or her choice,' . . . and '[m]ere disagreement as to the proper medical treatment' does not constitute deliberate indifference." King v. United States, 536 Fed. Appx. 358, 363 (4th Cir. 2013) (*quoting* Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). "An inmate's mere

disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." Jackson v. Sampson, 536 Fed. Appx. 356 (4th Cir. 2013), *citing* Russell v. Shaffer, 528 F.2d 318, 319 (4th Cir. 1975). Application of the Farmer test to Plaintiff's medical condition does not demonstrate that he is entitled to any relief, because he does not meet the first prong of the test.  Plaintiff has not been deprived of a basic need that was objectively sufficiently serious because his anxiety which resulted in a panic attack and "breakdown" is not an objectively sufficiently serious condition.  A serious medical need is one that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Serious medical conditions are those recognized to affect an essential life function. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995) (A broken jaw was recognized by the parties as a serious medical condition); Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas May 7, 1997) (Carpal tunnel syndrome and a rotator cuff injury were not serious medical conditions); Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999) (A foot condition involving a fracture fragment, bone cyst and degenerative arthritis which plaintiff claimed caused problems walking, pain and cramping, was not sufficiently serious). Plaintiff received a referral to see a physician, however, his condition was not determined to mandate urgent treatment. Plaintiff's anxiety condition may concern him, however, it is not a serious medical condition as contemplated by Farmer.

Accordingly, even if the Court were to consider Plaintiff's claims against Messinger on the merits, Plaintiff fails to state a claim upon which relief may be granted.

### 4.    Defendant Condin[8]

Plaintiff complaint and attachment assert that Defendant Condin threatened to put a "mace grenade" in the back of a jail transport van while Plaintiff was being transported, and that Condin "threatened [Plaintiff] with bodily harm if [he] questioned anything done or said".  ECF No. 1-1 at 1.  Plaintiff does not allege that Condin actually injured him, or caused him any injury through action or inaction.

Consistent with the holding of <u>Small v. Endicott</u>, 998 F.2d at 417 – 18, the Court is not required to construct arguments for the Plaintiff and cannot consider any arguments that are not presented by Plaintiff himself.

The Prisoner Litigation Reform Act (PLRA) requires proof of "physical injury." There is no recovery for mental or emotional stress without consequent physical injury. 42 U.S.C. § 1997e(e) provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  Plaintiff does not claim that Condin caused him any actual injury.  Accordingly, Plaintiff failed to state a claim against Condin, and regardless of the timeliness of his complaint, the claim against Condin should be dismissed.

For all the above reasons, it appears that Plaintiff has failed to state a claim against any named Defendant.  Therefore, because Plaintiff has failed to state a claim, regardless of the applicability of the statute of limitations, this complaint should be dismissed.

---

[8]  Plaintiff has also spelled this Defendant's name as "Cordin" and "Corbin".  ECF Nos. 1 at 3, 8; 1-1 at 1.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Plaintiff's complaint [ECF No. 1] be **DISMISSED WITH PREJUDICE**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        February 22, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE